# Commonwealth *v.* Duffield.

[ MAY, 1849.]

A resident of the state of Maryland by his will, proved there, directed his executors to set apart the sum of $20,000, the interest of which he directed to be paid annually to his sister, a resident of Pennsylvania, during her life, and gave to her a power of appointment over $10,000 of that sum, by her will or otherwise at her death: *held,* that the appointee took by virtue of the will of the first testator and was not subject to the charge of a collateral inheritance tax under the laws of Pennsylvania.

That a legacy passing by will under a general power of appointment is equitable assets for the payment of debts of the donee of the power, *dubitatur.*

ERROR to the Common Pleas of Cumberland county.

The Commonwealth of Pennsylvania against Henry Duffield and Sarah his wife, which said Sarah is the executrix of Margaret M'Donald, deceased.

The following facts were agreed upon and considered in the nature of a special verdict:

Margaret M'Donald, of Carlisle, died in May, 1844, having first made her last will and testament, and appointed Mrs. Sarah Duffield the executrix of the same, which will was duly proved before the register of Cumberland county, on the 1st of June, 1844, and letters testamentary issued in due form on the same, to the said Sarah Duffield, one of the defendants in this action. At the death of the said Margaret M'Donald, she left real estate valued at $3,000 —personal estate in inventory valued at $610 50—a note of the trustees of the presbyterian church of Carlisle, of

[Commonwealth v. Duffield.]

$100, not in inventory—and sundry notes of her niece, Margaret M'Donald, of the city of Baltimore, amounting to the sum of $1,000. That the foregoing property, which has been willed to collateral heirs, is liable to a collateral inheritance tax, there is no dispute—and a greater part of it has already been paid to the register of this county, and the tax will be paid on any balance of said estate that remains after paying debts and expenses of administration without controversy.

By the 5th clause of the will of said Margaret M'Donald, she gives the rest and residue of her personal property to Mrs. Duffield, and executes the power conferred by her brother's will as follows: " And whereas my brother, the late Alexander M'Donald, by his last will and testament, admitted to probate in the city of Baltimore, and bearing date the 23d July, A. D. 1836, did place at my disposal the sum of $10,000, by the following clause therein, to wit: 'I authorize and empower my said sister to give, bequeath and dispose of $10,000, (to take effect at her decease,) either by her last will and testament, or by any declaration of hers in writing,' &c.   Now it is my will and desire, and I give and bequeath the same to my niece, Sarah Duffield, and I do hereby direct the executors of my late brother to pay the same to her."

The said Alexander M'Donald was at his death a citizen of Baltimore, and his estate was there, and so continued at the death of Margaret M'Donald.   His will was proved in Baltimore, and was dated as aforesaid, on the 23d of July, 1836.   The clause in said will referred to in the will of Miss M'Donald, is as follows: "I will and direct that my executors and trustees, hereinafter named, set apart the sum of twenty thousand dollars out of my estate, and that they pay the interest and income thereof annually, or oftener, to my sister Margaret M'Donald, during the term of her natural life, for her comfortable maintenance and support; and I authorize and empower my said sister to

[Commonwealth v. Duffield.]

give, bequeath and dispose of one half of the said principal sum itself, to wit, ten thousand dollars, (to take effect at her decease,) either by her last will and testament, or by any declaration of hers in writing, to be signed in the presence of, and attested by two credible witnesses; and after the decease of my said sister, the other half of said principal sum to revert to my general estate; or if no disposition of the said sum of ten thousand dollars shall have been so as aforesaid made by her, then the whole shall so revert."

Since the death of Miss M'Donald, the executors of Alexander M'Donald, in Baltimore, have paid the $10,000 aforesaid to Mrs. Duffield.

The question for the court is, whether this $10,000, under the facts and circumstances is chargeable with a collateral inheritance tax?

WATTS, President, delivered the following opinion, which was the subject of the error assigned.

"Alexander M'Donald, a resident of the state of Maryland, by his will, directed his executors to set apart the sum of twenty thousand dollars of his estate, of which they should pay the interest annually to his sister Margaret M'Donald, resident in Pennsylvania, during her life for her maintenance and support, and by his said will authorized his said sister to dispose of one half of that sum, (ten thousand dollars,) to take effect at her decease, either by her will or any other declaration in writing. Margaret M'Donald subsequently died, having first made her will, by which, after reciting the will of her brother, Alexander M'Donald, she provides—'Now it is my will and desire, and I give and bequeath the same to my niece Sarah Duffield, and I do hereby direct the executors of my late brother to pay the same to her.'

"The executors of Alexander M'Donald, resident in Maryland, did pay the said ten thousand dollars to Sarah Duffield.

"Is this sum of ten thousand dollars chargeable with a

[ Commonwealth v. Duffield. ]

collateral inheritance tax, under the laws of Pennsylvania? May it be recovered in this action?

" Whether an action will lie to recover a collateral inheritance tax, payable to the commonwealth, under any circumstances, is a question which is neither raised by the case nor argued by the counsel. I will assume, therefore, that the object is to settle the question of right without regard to form.

" It is clearly settled upon authority not to be questioned, that a general power of disposition, not restrained as to the objects or the mode, is, in effect, property. Sugd. on Pow. 386; Powell on Pow. 368; 2 Ves. Sen. 9; 12 Ves. Jr. 192. It is therefore argued, that the execution of the power in this case, by Margaret M'Donald, made the bequest of $10,000 absolutely her own: that her domicil being in Pennsylvania, drew the possession of it to her, and that it is therefore subject to the collateral inheritance tax.

" In the Com. v. Smith, 5 Barr, 142, a construction is given to our statute which subjects the estates of certain persons to a collateral inheritance tax, the leading feature of which is that it is not the person, but " the estate within this commonwealth on which the tax is levied:" and his honour who delivers the opinion of the court, adds, " the domicil has nothing to do with the question." Unless the fund sought to be taxed was legally in Pennsylvania, by reason of the domicil of Margaret M'Donald, who had the jus disponendi of it, it cannot be considered as ever having been within the state, or subject to our laws. Alexander M'Donald's executors in Maryland were directed to fund it, and to pay the interest to his sister during her life, and to pay the principal to her appointee at her death; the will of Margaret M'Donald directs her brother's executors to pay it to Mrs. Duffield, and the special verdict finds that they did pay it to her.

" All our acts of assembly provide for the mode of collecting this tax, by charging the executors with it. By the

[Commonwealth v. Duffield.]

original act of the 7th of April, 1826, "no executor or administrator shall be discharged until the tax is paid." By the act of 24th February, 1834, an executor paying a legacy, shall retain 2½ per cent. If the bequest be specific, he shall not deliver it until the legatee pays to him 2½ per cent. on its appraised value. And by the act of 22d March, 1841, power is given to the register to issue a citation to the executor to compel him to pay the tax, which, if he neglect or refuse, the court are directed to enforce; so that all our laws look to the executor or administrator as the person liable to pay, and not to the legatee, against whom no action would lie, nor does the law give any remedy against him whatever. It is an unanswerable argument, that there is no remedy against a legatee, and therefore no right. If the executrix, therefore, of Margaret M'Donald, was alone responsible for this tax, she could only be liable on the ground of her having the means of payment; this she could only have by means of her having a right to recover the legacy itself, for the benefit of the legatee who was the appointee, or creditors, as the case might be. Now, was this legacy under the will of Alexander M'Donald, recoverable by the executrix of Margaret M'Donald as executrix; for it cannot alter the case, that the executrix and appointee happened to be the same person? The fund was in Maryland, in the hands of Alexander M'Donald's executor, and whosoever would recover it, must recover it there, under the laws of Maryland. It required no aid of the laws of Pennsylvania or of her courts, to enable a personal representative of Margaret M'Donald to recover the money, nor was the fund ever under the protection of Pennsylvania law. But we are of opinion that Mrs. Duffield, the appointee, was a legatee directly under the will of Alexander M'Donald, and that the legacy of $10,000 was rightly paid directly to her, as appointee, by the executors of Alexander M'Donald, and this proposition is clearly settled by our own court, in the case of *Hess* v.

2 F

*Hess,* 5 Watts, 187, where the court decided that the right of action to recover a legacy under like circumstances is in the appointee directly against the executors of the first testator. We are for these reasons of opinion, that the plaintiff is not entitled to recover, and that judgment be entered for the defendant."

The cause was argued in the supreme court by *W. H. Miller* and *Samuel Hepburn,* for plaintiff in error; and by *Wm. M. Biddle,* for defendant in error.

The opinion of the court was delivered by

Gibson, C. J.—The enjoyment of this legacy by the first taker of it, was expressly limited to her life time; and she consequently took a particular interest in it, joined to a power of appointment at her death. Had the testator been an inhabitant of Pennsylvania, it would have been taxable as her property in her life time, and payment of the tax would not have been deferred till her death. He was, however, an inhabitant of Maryland, and the statute imposes no tax on a foreign legacy brought here when received. But money appointed by will under a general power to appoint' for any purpose, is held by English chancellors to be equitable assets for payment of the debts of the donee of the power; whence an impression that it is part of the donee's effects, and in this instance, taxable as such. Truly speaking, it is not. It is certainly not legal assets, as it would, had it been the donee's property; for it does not go into the hands of the executor in a course of administration. It is confessedly not a part of the donee's estate for the satisfaction of his creditors while he is living, and it cannot be more so when he is dead; for a title which did not vest in him when he had capacity to take, could not vest in him when he had lost all capacity whatever. Yet a chancellor intercepts the fund on its way to the appointee, and applies it to the debts of the donee of the power, not as what is actually a part of his effects, but as what, according to his

code of morality, ought to have been so for the benefit of his creditors. As was said, in *Harrington v. Hale*, 1 Cox, 132, he stops the legacy in *transitu* when a step has been taken to appoint it to the use of any one else; and this, a liberty taken with the direction given to the testator's bounty pursuant to his authority, and with what is essentially his act performed by the agency of another, is strangely put upon the moral obligation which binds the agent to pay his debts; the assumed violation of which, in not paying them with the money of another—in not robbing Peter to pay Paul—is held to give his creditors a specific equity against a volunteer under his appointment. "It may be a hard case," said Lord HARDWICKE, in *Townsend v. Windham*, 2 Ves. 8, "but I must not make a precedent that men may make a provision in prejudice of their creditors." Of what prejudice or wrong would his creditors have reason to complain? There is such barefaced injustice in applying the bounty of a man to the benefit of those for whom it was not intended, that the mind revolts at it. The appointee claims by the instrument which created the power, (Sugd. on Pow. 25,) and consequently not under, but paramount to the donee who executed it; and it seems impossible to conceive that the donee's creditors who stand in his place, can have an equity independent of him. A man who is appointed to manage the conduit pipe of another's munificence, is authorized by a general power of disposal to turn it at will to any quarter within the scope of his discretion; and in reason and justice his creditors have no right to control, because the management of it was not to them, nor even to him for their benefit. It is the bounty of the donor to whom they are strangers, and not the property of his instrument that is to be dispensed. A power instead of the ownership is usually given for the very purpose of enabling him to pass them by; and to give them what was intended for objects that were more in the donor's view, would be a fraud on him. He might exclude

them by an express restriction, and he does so in effect when he gives a legacy not to them nor their debtor, but to persons to be designated by him. In *Holmes* v. *Coghill*, 7 Ves. 506, Sir William Grant said "there is no reason why the money he (the donee) had a right to raise, should not be considered his property as much as a debt he had power to recover." The learned and excellent master of the rolls had forgotten, for the moment, the broad line of distinction between power and property. The creditors of a deceased husband are not entitled to the benefit of his surviving wife's choses in action, though he might have recovered it, and if it accrued during the coverture, by an action in his own name; and assignees in bankruptcy are authorized to execute a power in the bankrupt for the benefit of creditors only by the 3 G. IV. c. 31, § 53, subsequently made perpetual. There is much more reason in what Lord ELDON said, in *Holmes* v. *Coghill*, 12 Ves. 212, when it came before him on appeal. "It is much to be regretted that the right of creditors to receive satisfaction out of the estate of their debtor, should depend upon either artificial modes of conveyancing or artificial rules of law clashing with each other, and not to be reconciled to clear principles of law or equity. I confess I am not able to reconcile what a court of equity has been in the constant habit of doing and what it has refused to do." Again,—"A court of equity, certainly in favour of creditors, takes upon itself to disregard altogether the quality of the deed; to alter wholly the rights of the parties under it. Sir John Coghill, though bound to pay his creditors, would not be called by law to pay them out of an estate which is the property of another person. Yet equity does so strong an act as to pay them out of the estate which was vested not in him, but in his son." Whether for good or for evil, it is certainly a strong act. Yet on the foot of their shallow equity, bred by the commercial temper of the bankrupt law, and founded on too many precedents to be shaken, an English chancellor puts

[ Commonwealth *v.* Duffield.]

his hand into the fund and serves it out to them till all are satisfied, or till nothing remains. Whether this court will feel itself bound to do so remains to be determined.

I have been thus particular in examining the foundation of this doctrine of equitable assets, because the analogy to be drawn from it is the only foot which the commonwealth has to stand on; but its palpable injustice, in any event, must forbid the extension of it to cases merely analogous. But what is the supposed equity of the state as a tax proprietor? It may be said to be as much a moral duty to pay taxes as debts. Why so it is. But it is not either a legal or moral duty of the legatee, who transmits the remainder, to pay the tax on it. That is to be done, if at all, by the collateral recipient of it; and the analogy from a case between debtor and creditor consequently fails. Being pretermitted in the execution of the power, the state has not a legal title; and there can be no equitable title to a tax which is a creature of positive enactment. Her claim as a legal creditor would be a *petitio principii;* for she would be without pretence to call for a tax which could not be assessed on the legacy as the property of the donee of the power in his life time, or at his death—not in her life time, because she received the legacy in Maryland; and not at her death, because it was transmitted, not by her appointment, but by the testator's will, of which her appointment became a part. She was free from obligation to execute the power for the benefit of the state, which was not her creditor when she was alive, and could not become so when she was dead. To sustain the action, therefore, against the defendants as representatives of her person or estate, is impossible.

But Mrs. Duffield is not only a personal representative of the donee, but her appointee; and it is necessary to determine whether the state has a claim on her as a legatee. She got her legacy by an appointment under the will of a citizen of Maryland; and she stands before us as if she

[ Commonwealth *v*. Duffield. ]

were named in it.   The act of 1826, on which the claim is founded, provides that " all estates passing from any person who may be seized or possessed thereof, being within this commonwealth," shall be subject to a collateral inheritance tax; and the matter is to fix the point of time to which the material clause relates.   In *Commonwealth* v. *Smith*, 5 Barr, 142, the assets were here at the time of the death, and that is undoubtedly the period which the legislature had in view; for though it be certain that an estate created under a power takes effect as if created by the deed or will which raised the power, it does so only from the execution of the power; yet the distinction is not so obvious as to have suggested to the legislature the occurrence of such a case as the present.   In this instance the assets were in Maryland at the testator's death; the legacy was enjoyed here by the first taker; and no more is required by the second than that she should be at liberty to enjoy the residue of it without disturbance as her predecessor.   In point of fact, the *corpus* was not here at all.   The testator directed it to be set apart in Maryland for the use of his sister in Pennsylvania during her life, and for her appointee at her death. Personal property has no locality as to the succession, though the rights of creditors who owe no allegiance to the country of the domicil, are determinable by the *lex loci rei sitæ;* but, in this case, the actual as well as the domiciliary *situs* was in Maryland where the ownership vested in the appointee.   We have then the ordinary case of a legacy given and received in a foreign state; and it is not taxable here.

    Judgment affirmed.*

  * Where a testator devised his estate in trust for his daughter, for life, and after her decease, in trust for such persons as she should by will appoint; and the daughter by her will devised all her estate to which she was entitled, under the will of her father, in trust for her brothers and sisters, or their children, lineal descendants of the original testator; it was held, that though such brothers and sisters, and their children, were collateral heirs of the

daughter, they took under the will of the father, by virtue of the power of
appointment; and that the estate was not liable to the collateral inheritance
tax. *Com. v. Williams*, 1 Harris, 29. Where a testatrix, reciting that A. was
indebted to her on bond, declared that in case he made no demand against
her estate for boarding or services rendered her, she bequeath him the debt
due by him, and directed her executors to cancel the bond: this legacy is
subject to the tax on collateral inheritances. *Tyson's Appeal*, 10 Barr, 220.